UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

MILAGROS MENDEZ-RAMOS,

    Plaintiff,

    v.

MICHAEL J. ASTRUE,

    Defendant.

Civil No. 10-1525 (JAF)

**OPINION AND ORDER**

Claimant petitions this court under 42 U.S.C. § 405(g) to review the decision of Defendant, the Commissioner of Social Security ("Commissioner"), denying Claimant's application for disability benefits. (Docket Nos. 1; 7.) Commissioner files a memorandum defending the denial (Docket No. 11), and Claimant files a memorandum challenging it (Docket No. 14).

**I.**

**Background**

We derive the following facts from the transcript of the record in this case ("R."). Claimant was born on July 5, 1974. (R. at 52.) From 1979 to 1989, Claimant worked as a group leader at a children's clothing factory. (R. at 94.) In 1990, she became a machine operator at an underwear factory, where she worked until 1996. (Id.) From 1999 to 2002, she worked as a fish cleaner in a plant. (Id.) In 2002, the Claimant had a depressive crisis, and

Civil No. 10-1525 (JAF)                                                                                                    -2-

there is no indication that she has worked since. (R. at 346, 362–63.) Claimant has a history of more than thirty years of physical and verbal abuse at the hands of her alcoholic husband. (R. at 293.)

In 2002, Claimant reported feeling depressed for several days at a time. (R. at 216.) Claimant's primary-care physician at the time, Dr. Manuel Santiago ("Dr. Santiago"), reported this episode. (Id.) It is unclear from the record what treatment was prescribed if any. (Id.) In May 2004, Claimant began seeing a doctor in the Behavioral Health Division[1] of the Ponce School of Medicine ("Ponce School of Medicine").[2] (R. at 139.) The doctor's name was Japhet Gaztambide ("Dr. Gaztambide"). Since then, Claimant has continued to receive treatment by doctors at the Ponce School of Medicine. (R. at 131–42, 160–70, 296–310.)

In January 2005, Claimant made an emergency room visit, because of what Claimant now characterizes as a panic attack. (Docket No. 14 at 4.) Claimant continued to be seen by Dr. Gaztambide. (R. at 160–61.) In March 2005, Dr. Gaztambide examined Claimant, and, based on her observations over a ten-month period, diagnosed Claimant with a major depressive disorder that was recurrent and severe. (Id. at 160.)

On April 6, 2005, Claimant applied for Social Security disability benefits. (R. at 52–54.) She claimed that she was disabled under the Social Security Act, 42 U.S.C. § 416 and 423

---

[1] "Behavioral Health Division" is the English translation of the Spanish name, "Centro de Salud Conductal." Throughout this opinion we use "Ponce School of Medicine" to refer to this organization.

[2] In her memorandum of law, Claimant states that she began visiting the Ponce School of Medicine on March 15, 2004. (Docket No. 14 at 3.) The portion of the record that Claimant cites to suggests her first visit took place at a later date, on May 3, 2004. (R. at 137–41.)

Civil No. 10-1525 (JAF) -3-

("Act") on account of depression and other physical conditions.[3] (R. at 40.) On December 22, 2004, Commissioner determined that Claimant was not disabled and, accordingly, was not entitled to disability benefits under the Act. (R. at 33–34.) Claimant requested reconsideration of the determination, and on April 26, 2005, Commissioner affirmed the denial. (R. at 40.)

Claimant requested a hearing before an administrative law judge ("ALJ") (R. at 25), which took place before ALJ Gilbert Rodríguez, on February 22, 2008 (R. at 344–67). Claimant attended the hearing with counsel and testified regarding her alleged disability. (Id.) On the basis of that testimony and evidence discussed below, the ALJ rendered a decision on April 24, 2008, determining that Claimant is not disabled and denying her benefits under the Act.[4] (R. at 13–23.) Claimant requested review of the ALJ decision from the Appeals Council and, on May 6, 2010, the Appeals Council denied her that review. (R. at 3–8.) Finally, on June 10, 2010, Claimant filed the instant case for judicial review of Commissioner's decision. (Docket No. 1.)

---

[3] The physical ailments that Claimant complained of include hypertension, diabetes, headaches, and gastritis. (R. at 19.) Plaintiff does not challenge the ALJ's determination regarding these physical ailments, (Docket No. 14), and we see no error in the ALJ's finding that these physical ailments were not severe. (R. at 19.)

[4] The Act outlines a five-step inquiry to determine whether a claimant is disabled. Step one focuses on the claimant's work activity; if claimant is "doing substantial gainful activity," he will be found "not disabled." 20 C.F.R. § 404.1520(a)(4). Step two determines whether a claimant's impairment(s) meet the Act's severity and duration requirements. Id. A claimant bears the burden of proof "at step one of showing that he is not working, [and] at step two that he has a medically severe impairment or combination of impairments. . . ." Bowen v. Yuckert, 482 U.S. 137, 146, n.5, (1987). The ALJ found Claimant was not disabled at step two and, in accordance with the Act, he did not go on to the next steps of the inquiry. (R. at 18–19.)

## II.

## **Standard of Review**

An individual is disabled under the Act if she is unable to do her prior work or, "considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d). The Act provides that "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." § 405(g). Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the] conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). We must uphold Commissioner's decision if we determine that substantial evidence supports the ALJ's findings, even if we would have reached a different conclusion had we reviewed the evidence de novo. Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981).

Our review is limited to determining whether the ALJ employed the proper legal standards and focused facts upon the proper quantum of evidence. Manso-Pizarro v. Sec'y of Health and Human Servs., 76 F.3d 15, 16 (1st Cir. 1981). We reverse the ALJ if we find that he derived his decision "by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). In reviewing a denial of benefits, the ALJ must have considered all evidence in the record. 20 C.F.R. § 404.1520(a)(3).

Civil No. 10-1525 (JAF) -5-

### III.

### Analysis

Claimant contends that the ALJ erred in finding that Claimant did not suffer from a "severe" medically-determinable impairment or combination of impairments on or before March 31, 2005, the date Claimant last met the Act's disability insured status requirement.[5] (R. at 18.)

We analyze this contention below with respect to the ALJ's determination that none of her ailments constituted a severe impairment or combination of impairments.

**A.   Treating Source Opinion**

In finding that Claimant's mental impairment was not "severe," the ALJ rejected the opinion of Claimant's treating psychiatrist, Dr. Gaztambide. (R. at 18–19.) Claimant argues that the ALJ did not give adequate reasons for rejecting Dr. Gaztambide's medical opinion, citing 20 C.F.R. § 404.1527(d)(2). (Docket No. 11 at 14.) We agree with Claimant.

The First Circuit has ruled on a case with similar facts, holding that the ALJ had improperly rejected a treating psychiatrist's opinion. Referring to 20 C.F.R. § 404.1527(d)(2), the Court explained:.

> That regulation states that the agency will give treating source opinions "on the nature and severity" of a claimant's impairment "controlling weight" if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other

---

[5] Based on the earnings posted in Claimant's record, she had to show that she was disabled on or before March 31, 2005, when Claimant last met the Act's insured status requirement, as determined by 20 C.F.R. § 404.130–31. (R at 18–20.)

Civil No. 10-1525 (JAF) -6-

> substantial evidence" in the case. The regulation also provides that the agency will "always give good reasons" for the weight it gives a treating source opinion.

Soto-Cedeño v. Astrue, 380 Fed. Appx. 1, 3 (1st Cir. 2010) (quoting 20 C.F.R. § 404.1527(d)(2)). The First Circuit held that an absence of clinical notes supporting the treating source opinion did not justify the ALJ's rejection of that opinion. Id. at *2–3. That reasoning is relevant here as well.

In the instant case, the ALJ rejected Dr. Gaztambide's opinion because the:

> [c]linical notes of treatment from such treating source . . . fail to reveal severe symptoms and functional limitations. There is no evidence of emotional instability, ilogical [sic] thinking, personality changes, disorientation or poor reality contact . . . . On the contrary the claimant is reported doing well, basically stable with treatment and no significant mental dysfunction is reflected. (see reports from Dr. Gaztanbide [sic] and the "Centro de Salud Conductal" in Exhibits 1F, 3F, 5F, 10F.)

R. at 19–20.

Having reviewed the record, we disagree with the ALJ's findings. The cursory sentence above is the only mention the ALJ made of more than forty-four pages of medical notes depicted in Exhibits 1F, 3F, 5F and 10F. (R. at 19–20.) These reports in Exhibits 1F, 3F, 5F and 10F cannot bear the ALJ's positive description of them.[6] For example, in her March 2005 report, labeled Exhibit 3F, Dr. Gaztambide described the Claimant's comprehensive list of psychological symptoms, including: anhedonia, disturbance of appetite, suicidal thoughts,

---

[6] The ALJ refers to reports by the "Centro de Salud Conductal," which we refer to as the "Ponce School of Medicine." The Exhibits that the ALJ cursorily references are found in the Record at pages 131–42 (1F), 160–63 (3F), 165–70 (5F), and 311–36 (10F).

Civil No. 10-1525 (JAF) -7-

feelings of worthlessness, poor thought content, mood disorder, difficulty concentrating, pathological dependence, change in personality, and isolation. (R. at 160–63.) Dr. Gaztambide's report also indicated that Plaintiff was disoriented in space and time, sometimes had difficulty with perception and hallucinations. (Id.) The report concluded that Plaintiff was "markedly limited" in her ability to pay attention and concentrate, work at a consistent pace, understand and perform simple instructions, maintain a regular attendance, complete a normal workday, deal with normal work-related stress, accept instructions, and relate to coworkers. These hardships do not describe a patient that is "doing well," as the ALJ wrote. (R. at 19.)

The ALJ's description of the later reports are equally inaccurate. In a report on April 27, 2005, labeled as Exhibit 5F, Dr. Gaztambide noted that Claimant showed a "poor response," and had made a "poor improvement since last report." (R. at 166.) Contrast this with the ALJ's statement that the patient was "basically stable with treatment." (R. at 19.)

The ALJ's statements seem most incongruous when compared to Claimant's last reports, labeled as Exhibit 10F. Doctors from the Ponce School of Medicine made the following notes of Claimant's condition in 2007: Suffers from hallucinations, angry, can't stay in crowded places for long periods, distracted, depressed, anxious, undergoing cognitive difficulties, suicidal (R. at 326–27). Claimant was also described as distracted, depressed, anxious, suicidal, suffering from psychomotor retardation, and spending most of her time lying down in bed. (R.

Civil No. 10-1525 (JAF) -8-

at 311–36.) This laundry list includes many "significant mental dysfunction[s]," contrary to the ALJ's characterization. (R. at 19.)

The ALJ also improperly characterized Dr. Santiago's reports. He wrote that Dr. Santiago's notes of Claimant's progress between February 2004 and March 2005 "do not reflect any type of psychiatric allegation, active psychiatric symptoms or apparent mental dysfunction." (R. at 20.) Yet on page ninety-two, in progress notes dated December 13, 2004, Dr. Santiago noted that the "patient complains of frequent depression." (R. at 92.)

To reject the treating physician's opinion, the ALJ should have given "good reasons" why Dr. Gaztambide's report was either not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or "inconsistent with the other substantial evidence" in the case. 20 C.F.R. § 404.1527(d)(2). After examining the record, we find that the ALJ did neither. His cursory description of the record's medical evidence, especially from Claimant's treating physician, was inaccurate. (R. at 19–20.) The ALJ's decision in this case cannot be said to rest on "substantial evidence." See Vega-Valentin v. Astrue, 725 F.Supp.2d 264, 272–73 (D.P.R. 2010) (finding "insufficient evidence to support the ALJ's determination" that claimant was not disabled by mental impairment).

## IV.

## Conclusion

For the reasons stated above, we **REMAND** the Commissioner's decision for further proceedings consistent with this opinion, including the receipt of additional evidence. We note

Civil No. 10-1525 (JAF)                                                                                              -9-

1   that this remand is within sentence four of 42 U.S.C. § 405(g), pursuant to <u>Shalala v. Schaeffer</u>,

2   509 U.S. 292, 297 (1993).

3   **IT IS SO ORDERED**.

4   San Juan, Puerto Rico, this 9th day of February, 2012.

5                                                                 s/José Antonio Fusté
6                                                                 JOSE ANTONIO FUSTE
7                                                                 U.S. District Judge